**CITY OF GARLAND, Texas, Appellant,**

v.

**VALLEY OIL COMPANY, Appellee.**

**No. 17891.**

Court of Civil Appeals of Texas, Dallas.

June 22, 1972.

Rehearing Denied July 13, 1972.

Louis F. Mathis, Asst. City Atty., Garland, for appellant.

Jake C. Cook, Fort Worth, for appellee.

GUITTARD, Justice.

The trial court granted an injunction restraining the city of Garland from enforcing an ordinance which required plaintiff Valley Oil Company to discontinue after one year the operation of a self-service gasoline station in an area where such use was forbidden by a general zoning ordinance. The city appeals. We hold the ordinance to be valid and dissolve the injunction.

■ By its first point the city contends that since plaintiff appeared before the board of adjustment, it cannot make a collateral attack on the action of the board by this suit for injunction, but is limited to direct review under Vernon's Tex.Rev.Civ. Stat.Ann. art. 1011g (Supp.1972). This point is overruled. This suit does not attack the order of the board of adjustment, but rather the ordinance adopted by the city council on August 4, 1970. The only action by the board was a resolution adopted March 18, 1970 "that the station in question be phased-out in one (1) year's time from the date of the Ordinance passed by the City Council." This resolution was not a final determination of the matter, since it had no force until action was taken by the city council. Apparently, it was only a recommendation. The city council expressly adopted this recommendation at its meeting on July 21. That decision was implemented by enactment of the ordinance in question on August 4, and the present suit was filed to restrain the enforcement of that ordinance.

■ Although article 1011g allows any person aggrieved by any decision of the board of adjustment to present to the court within ten days a petition showing that the decision of the board is illegal, no provision is made for similar review of the action of the city council. The property owner may maintain an independent action attacking such an ordinance on the ground that it is arbitrary and unreasonable. City of Amarillo v. Stapf, 129 Tex. 81, 101 S. W.2d 229 (1937); City of Carthage v. Allums, 398 S.W.2d 799 (Tex.Civ.App., Tyler 1966, no writ).

■ By its second and third points the city asserts that the trial court erred in requiring the board to furnish plaintiff a "substantially judicial type hearing with all of the traditional concepts of due process," and in determining the case on procedural due process without any pleadings to support such a determination. These points are sustained. The action complained of is not an order of the board, but an ordinance enacted by the city council. Plaintiff has made no attack on that ordinance for lack of procedural due process. The petition alleges that the attempt to enforce the ordinance deprives plaintiff of its vested property rights without due process of law and that the ordinance "is an unreasonable, unnecessary, and unconstitutional exercise of the police power of said City, and deprives plaintiff of his private property rights without compensation and without due process of law, and will deprive

plaintiff of its non-conforming use of the property." There is no allegation of lack of notice, denial of hearing, or any other procedural irregularity in enacting the ordinance. The judgment recites that the resolution of the board and the ordinance "should be set aside because of lack of procedural due process," but no procedural irregularities are specified, and plaintiff has not pointed out to us anything in the record which would support this recital. Consequently, the judgment below cannot be sustained on this ground, and we must examine the record further to determine whether plaintiff has established its allegations that the ordinance is void as unreasonable or as depriving plaintiff of property without due process of law.

By its remaining points the city seeks to sustain the ordinance on the ground that the trial court erred in holding that plaintiff had a valid nonconforming use, and in ruling that the ordinance requiring plaintiff to discontinue the use after one year was unreasonable and not supported by substantial evidence. These points are sustained.

The general zoning ordinance adopted in 1962 provides that all territory thereafter annexed should be temporarily classified as "agricultural district" until permanent zoning is established by the city council. In January, 1966, before the land in question was annexed, the owners of the property leased it to Petro, Inc. for a term of fifteen years. The lease specified that the land should be used "for filling station, carwash, drive in grocery, washateria or other affiliated business and for no other purpose." The annexation ordinance recites that it was published March 24, 1966, was "passed and approved on initial action" April 19, 1966, and was "passed and approved on final action" on June 6, 1966. In the interim between initial and final action, the station was built and plaintiff made its initial investment. Construction began May 2 and gasoline sales began May 11. In the same month plaintiff "took over" the lease and purchased the equip-

ment from the lessee for $4,000. The value of the equipment at that time, according to plaintiff, was $1,500 for pumps, $934.40 for storage tanks, $1,475 for a building and $521.71 for inventory. Two years later, in May, 1968, plaintiff purchased the land for $20,000.

After plaintiff began operating the station a church was built on adjoining property and houses were built in a residential subdivision across the street. So far as the record shows, none of the land in the area other than plaintiff's service station is used for commercial or industrial purposes. On February 2, 1970 plaintiff received a notice from the city of a hearing before the board of adjustment to consider "termination and discontinuation of the nonconforming gas station." After two hearings before the board and one before the city council, the ordinance in question was passed and approved requiring plaintiff to discontinue operation of the station within one year.

At the council hearing plaintiff admitted that all of the service station equipment could be moved. Evidence before the court shows that plaintiff operates a total of fifteen self-service stations, and that associated companies operate about four hundred and fifty stations. In answer to interrogatories, plaintiff stated that its net profits from the station for the fiscal years after beginning operation, without considering land cost, interest on the outstanding note or depreciation, were as follows:

| 1967 | 1968 | 1969 | 1970 | 1971 |
|------|------|------|------|------|
| $2572 | $4237 | $3309 | $3197 | $3067. |

On the same basis, plaintiff estimated its net profits from August 14, 1970 through August 14, 1971 would be $5,966.

 The question is whether under these circumstances the ordinance requiring discontinuance of the use in one year was unreasonable and arbitrary and therefore beyond the police power of the city to restrict the use of property in the interest

of public health, safety and general welfare. City of Corpus Christi v. Allen, 152 Tex. 137, 254 S.W.2d 759 (1953). We hold that plaintiff has not shown the ordinance to be unreasonable and arbitrary. When plaintiff made its initial investment, it was charged with notice that the land was in the process of annexation and that upon annexation would be zoned so that its use as a service station would be prohibited. Since the city's potential jurisdiction had attached, plaintiff acted at its peril and now has no standing to complain that it has been deprived of its property without due process. City of Dallas v. Meserole, 155 S.W.2d 1019 (Tex.Civ.App., Dallas 1941, writ ref'd w. o. m.). *Cf.* Houston Ice & Brewing Co. v. Keenan, 99 Tex. 79, 88 S.W. 197 (1905).

In the second place, the period of one year allowed before discontinuance of the station was not unreasonable in view of undisputed evidence that plaintiff had already recovered its initial investment of $4,000 several times over at the time the ordinance was adopted, and that in the one additional year allowed by the ordinance, plaintiff's expected profit would amount to almost 150 per cent of that investment, without considering removal and use of the equipment at other stations. An ordinance requiring termination of even a legal nonconforming use is valid if a reasonable time is allowed for recovery of the investment. Swain v. City of University Park, 433 S.W.2d 727 (Tex.Civ.App., Dallas 1968, writ ref'd n. r. e.); National Advertising Company v. County of Monterey, 1 Cal.3d 875, 83 Cal.Rptr. 577, 464 P.2d 33 (1970).

 Plaintiff contends that it should have been allowed enough time to amortize the $20,000 it paid for the land, since there was evidence that the land would be worth less than $1,000 on discontinuance of the station. This contention is not well taken because plaintiff bought the land well after annexation, when operation of the station was at best a nonconforming use under the applicable zoning ordinance and subject to involuntary termination on allowance of a reasonable period for amortization of the initial investment. An additional investment in a nonconforming use cannot extend the period of amortization or otherwise restrict the city's police power. This principle has been recognized in cases involving replacement of nonconforming structures and extensions of nonconforming uses. Since one of the legitimate objectives of zoning regulations is eventually to eliminate nonconforming uses, it has been held that a nonconforming structure cannot be replaced or substantially altered so as to prolong the nonconforming use. Goodrich v. Selligman, 298 Ky. 863, 183 S.W.2d 625 (1944); Cole v. City of Battle Creek, 298 Mich. 98, 298 N.W. 466 (1941). Likewise, it has been held that the owner of a nonconforming service station, who, with actual or constructive notice of a zoning ordinance, purchases an adjoining lot for the purpose of building a larger station, cannot complain of any hardship by denial of such extended use. DeWitt v. Town of Brattleboro, 262 A.2d 472 (Vt. 1970).

For the reasons stated, we hold that the ordinance in question has not been shown to be arbitrary and unreasonable. Consequently, it must be sustained as a valid exercise of the city's police power. The judgment of the trial court is reversed and judgment is here rendered dissolving the injunction.

Reversed and rendered.